UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:21-cr-091 |
| v. | |
| | PLEA AGREEMENT |
| NESLY MWARECHEONG, also known as Grace, | |
| Defendant. | |

The United States of America (also referred to as "the Government"), Defendant, Nesly Mwarecheong, and Defendant's attorney, enter into this Plea Agreement.

### A. CHARGES

1. <u>Subject Offenses</u>. Defendant will plead guilty to Count 4 and Count 5 of the Indictment, that is, Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, in violation of Title 18, United States Code, Sections 1592 and 2.

2. <u>Charges Being Dismissed</u>. If the Court accepts this Plea Agreement, Count 1 of the Indictment, that is, Conspiracy to Commit Forced Labor, in violation of Title 18, United States Code, Sections 1589(a) and 1594(b), and Counts 2 and 3 of the Indictment, that is, Forced Labor, in violation of Title 18, United States Code, Sections 1589(a) and 2, will be dismissed at the time of sentencing. Defendant understands that, even though Counts 1, 2, and 3 will be dismissed, all relevant conduct, including the conduct that supported the charges in Counts 1, 2, and 3, will

1

be considered by the Court at the time of sentencing.

## B. MAXIMUM PENALTIES

3. <u>Maximum Punishment</u>. Defendant understands that the crime to which Defendant is pleading guilty in Counts 4 and 5 carries a maximum sentence of five (5) years in prison; a maximum fine of $250,000; and a term of supervised release of not more than three (3) years. A mandatory special assessment of $100 per count must also be imposed by the Court. Defendant understands that these sentences may be imposed consecutively.

4. <u>Supervised Release--Explained</u>. Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions. If Defendant were to violate a condition of supervised release, Defendant could be sentenced to not more than two (2) years in prison on any such revocation, without any credit for time previously served.

5. <u>Detention</u>. Defendant agrees to remain in custody following the completion of the entry of Defendant's guilty plea to await the imposition of sentence.

## C. NATURE OF THE OFFENSE – FACTUAL BASIS

6. <u>Elements Understood</u>. Defendant understands that to prove the offense alleged under **Counts 4 and 5 (Unlawful Conduct with Respect to Documents in Furtherance of Trafficking)**, the Government would be required to prove beyond a reasonable doubt the following elements:

> (a) Defendant knowingly concealed, removed, confiscated, or possessed an actual or purported immigration document or other

        government identification document of Person #1 and Person #2;

  (b)    Defendant's concealment, removal, confiscation, or possession of the document was done in the course of committing forced labor, in violation of Title 18, United States Code, Section 1589(a), or with the intent to commit forced labor, in violation of Title 18, United States Code, Section 1589(a); and

  (c)    Defendant acted knowingly and intentionally.

The elements of forced labor, in violation of Title 18, United States Code, Section 1589(a), are as follows:

  (a)    Defendant obtained the labor or services of another person;

  (b)    Defendant did so through at least one of the following means: force, threats of force, physical restraint, or threats of physical restraint to that person; serious harm or threats of serious harm to that person; the abuse or threatened abuse of law or legal process; or a scheme, plan, or pattern intended to cause the person to believe that if that person did not perform such labor or services that person or another person would suffer serious harm or physical restraint; and

  (c)    Defendant acted knowingly.

7.    <u>Factual Stipulations</u>. Attached hereto as Attachment "A", and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of Defendant's offense conduct relating to each of the subject offenses. Defendant acknowledges that these statements are true.

8.    <u>Truthfulness of Factual Basis</u>. Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury

if Defendant gives any false answers.

9. <u>Waiver of Rule 410 Rights</u>. Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this Plea Agreement, including in Attachment A, are admissible against Defendant. Should Defendant fail to plead guilty pursuant to this Plea Agreement or move to withdraw Defendant's plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

10. <u>Venue</u>. Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

D. **SENTENCING**

11. <u>Sentencing Guidelines</u>. Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

    (a)    The nature of the offenses to which Defendant is pleading guilty;

    (b)    Defendant's role in the offenses;

    (c)    The nature and extent of Defendant's criminal history (prior convictions); and

    (d)    Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or

"vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

12. <u>Acceptance of Responsibility</u>. The Government agrees as a recommendation to the District Court that Defendant receive credit for acceptance of responsibility under USSG §3E1.1(a). The Government reserves the right to oppose a reduction under §3E1.1(a) if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise fails to clearly demonstrate acceptance of responsibility.

13. <u>Presentence Report</u>. Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

14. <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form.

>A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

15. <u>Evidence at Sentencing</u>. The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement. Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

16. <u>Sentence to be Decided by Judge -- No Promises</u>. This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties. Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding. Therefore, it is uncertain at this time what Defendant's actual sentence will be.

17. <u>No Right to Withdraw Plea</u>. Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated,

or if the sentencing judge declines to follow the parties' recommendations.

### E. FINES, COSTS, AND RESTITUTION

18. <u>Fines and Costs</u>. Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

19. <u>Special Assessment</u>. Defendant agrees to pay the mandatory special assessment of $100 per count of conviction at or before the time of sentencing, as required by 18 U.S.C. § 3013.

20. <u>Restitution</u>. The Trafficking Victims Protection Act requires the Court to order restitution to the victims of certain offenses, including the offenses to which Defendant is pleading guilty. Defendant agrees that her conduct is governed by 18 U.S.C. § 1593 and agrees to pay the full amount of restitution to all victims affected by her offense conduct. Defendant understands that, pursuant to 18 U.S.C. § 1593(b) and other governing statutes, the Court is required to order restitution for the full amount of the victims' compensable losses as defined by 18 U.S.C. § 2259(c)(2) and shall include the greater of the gross income or value to Defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act ("FLSA"). The FLSA also provides for liquidated damages in an amount equal to double the amount of back wages owed (*see generally* 29 U.S.C. § 216). In consideration of Defendant's guilty plea, the government agrees not to seek liquidated damages.

In exchange for the government's decision to dismiss the remaining counts of

the Indictment, Defendant agrees that her sentence shall include paying restitution to all victims of her offense conduct including the victims covered in the factual basis and other victims harmed as a result of Defendant's conduct, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3). The total amount of restitution that Defendant agrees to pay is $69,854.24. Specifically, Defendant agrees that restitution is due to the following victims, in the following amounts, which Defendant will be ordered to pay jointly and severally with her co-defendant: $10,484.27 to be paid to G.T. (Person #1 in the Indictment), $29,881.07 to be paid to J.T. (Person #2 in the Indictment), and $29,488.90 to be paid D.T.[1]

Defendant agrees that $9,100 in United States currency, which was seized from Defendant on or about November 10, 2020, and is currently in the possession of the government, may be used to contribute to Defendant's restitution obligation. Defendant waives any and all rights to those funds and agrees that the government may relinquish those funds to G.T., J.T., and D.T. in partial satisfaction of Defendant's restitution obligation.

Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding. Defendant agrees that such order of restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the

---

[1] Not named in the Indictment.

required payments. Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

21. <u>Financial Statement</u>. Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

### F. LIMITED SCOPE OF AGREEMENT

22. <u>Limited Scope of Agreement</u>. This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

23. <u>Agreement Limited to Southern District of Iowa</u>. This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

24. <u>Immigration Consequences of Defendant's Guilty Plea</u>. Defendant has discussed with Defendant's counsel the impact of Defendant's guilty plea on Defendant's immigration status if Defendant is not a citizen of the United States.

Defendant specifically understands that Defendant's guilty plea may restrict Defendant's ability to challenge Defendant's removal from the United States in the future, and that Defendant may be subject to immediate removal from the United States following the service of Defendant's sentence.

25. <u>Victims G.T., J.T., and D.T. are Not a Party to this Agreement</u>. Defendant understands that G.T., J.T., and D.T. are not parties to this Plea Agreement, and that the "loss" and "restitution" amounts applicable to this criminal case do not resolve any claims that G.T., J.T., and D.T. may have against Defendant. Defendant understands that G.T., J.T., and D.T. remain free to pursue all lawful civil remedies they may deem appropriate.

## G. WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

26. <u>Trial Rights Explained</u>. Defendant understands that this guilty plea waives the right to:

- (a) Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

- (b) A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

- (c) The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

- (d) Confront and cross-examine adverse witnesses;

- (e) Present evidence and to have witnesses testify on behalf of Defendant, including having the Court issue subpoenas to compel witnesses to testify on Defendant's behalf;

- (f) Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if

    Defendant so chooses); and

 (g) If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

27. <u>Waiver of Appeal and Post-Conviction Review</u>.  Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charges or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law.  Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255.  These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H. VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

28. <u>Voluntariness of Plea</u>.  Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

 (a) Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

 (b) No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

    (c)    No one has threatened Defendant or Defendant's family to induce this guilty plea.

    (d)    Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

29.    <u>Consultation with Attorney</u>. Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

    (a)    Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

    (b)    Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

    (c)    Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I. GENERAL PROVISIONS

30.    <u>Entire Agreement</u>. This Plea Agreement, and any attachments, is the entire agreement between the parties. Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

31.    <u>Public Interest</u>. The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

32.    <u>Execution/Effective Date</u>. This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated

representatives) shown below.

J.  SIGNATURES

33. <u>Defendant</u>. I have read all of this Plea Agreement and have discussed it with my attorney. I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No promises have been made to me other than the promises in this Plea Agreement. I have not been threatened in any way to get me to enter into this Plea Agreement. I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case. I am entering into this Plea Agreement and will enter my plea of guilty under this Plea Agreement because I committed the crime to which I am pleading guilty. I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

10/5/2022
Date

Nesly. M
Nesly Mwarecheong

34. <u>Defendant's Attorney</u>. I have read this Plea Agreement and have discussed it in its entirety with my client. There is no Plea Agreement other than the agreement set forth in this writing. My client fully understands this Plea Agreement. I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion. I have had full access to the Government's discovery materials, and I believe there is a factual basis

for the plea. I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

__9/30/22__  
Date

_/s/ Andrew Graeve_  
Andrew Graeve  
Attorney for Nesly Mwarecheong

35. <u>United States</u>. The Government agrees to the terms of this Plea Agreement.

Richard D. Westphal  
United States Attorney

__10/5/2022__     By: _/s/ Ryan Leemkuil_  
Date  
Ryan Leemkuil  
Assistant U.S. Attorney  
U.S. Courthouse Annex, Suite 286  
110 East Court Avenue  
Des Moines, Iowa 50309  
Telephone: 515-473-9300  
Telefax: 515-473-9292  
E-mail: ryan.leemkuil@usdoj.gov

Kristen M. Clarke  
Assistant Attorney General for the United States

__10/5/2022__     By: _/s/ Christina Randall-James_  
Date  
Christina Randall-James  
Trial Attorney  
150 M Street NE  
Washington, DC 20001  
Telephone: 202-598-5701  
E-mail: christina.randall-james@usdoj.gov

Attachment "A"

STIPULATION OF FACTS

1. Beginning in approximately December 2019 and continuing through approximately October 2020, in the Southern District of Iowa and elsewhere, defendant Nesly MWARECHEONG did knowingly conspire and agree with Bertino Weires to obtain the labor and services of G.T. and J.T. by means of force and threats of force, serious harm and threats of serious harm, and a scheme, plan, and pattern intended to cause G.T. and J.T. to believe that if G.T. and J.T. did not perform such labor or services, that G.T. and J.T. would suffer serious harm.

2. In late 2019, MWARECHEONG and Weires convinced G.T. and J.T. to leave their homes in Chuuk and travel to the United States. MWARECHEONG and Weires promised G.T. and J.T., and their families, that G.T. and J.T. could work in the United States and send money back to their families in Chuuk.

3. MWARECHEONG and Weires arranged for G.T. and J.T. to travel to the United States by purchasing them plane tickets to the United States and sending them money to obtain passports. MWARECHEONG and Weires told G.T. and J.T. that they would need to pay back the cost of their plane tickets.

4. After G.T. and J.T. arrived in the United States on December 22, 2019, MWARECHEONG, in Weires's presence, took their passports. MWARECHEONG told G.T. and J.T. that she would return their passports after they paid her back. MWARECHEONG and Weires obtained social security cards for G.T. and J.T. and MWARECHEONG kept those social security cards in her possession.

5. In March 2020, MWARECHEONG and Weires took G.T. and J.T. to Ottumwa, Iowa, where G.T. and J.T. obtained employment at the JBS pork processing plant. Weires completed G.T.'s and J.T.'s employment applications, because neither G.T. nor J.T. could read or write in English. Neither MWARECHEONG nor Weires were employed during the time that G.T. and J.T. worked at JBS in Ottumwa.

15

6. G.T. and J.T. generally worked eight hour shifts six days per week at JBS. Their weekly pay generally ranged from $800 to $1,000. Every week, MWARECHEONG, usually with Weires, took G.T. and J.T. to a bank or check cashing business to cash G.T.'s and J.T.'s payroll checks from JBS. Prior to doing so, MWARECHEONG would give G.T. and J.T. their passports so they could cash their checks. After G.T. and J.T. cashed their checks, MWARECHEONG would take the cash and passports from G.T. and J.T., allowing them to keep just a small amount of their wages, typically $20.

7. MWARECHEONG obtained the labor of G.T. and J.T. by means of a scheme, plan, and pattern intended to cause G.T. and J.T. to believe that, if they did not perform such labor or services, they would suffer serious financial and other harm. For example, MWARECHEONG and Weires took nearly all the money G.T. and J.T earned leaving them unable to pay for their own living expenses and told G.T. and J.T. that they owed MWARECHEONG and Weires money for their plane tickets to the United States, even though MWARECHEONG and Weires took wages from G.T. and J.T. that far exceeded the cost of the plane tickets. MWARECHEONG limited and monitored G.T.'s and J.T.'s communication with their families and prevented them from socializing with individuals outside the home. Additionally, MWARECHEONG immediately confiscated and kept G.T.'s and J.T.'s passports and social security cards, which prevented G.T. and J.T. from returning to Chuuk or finding other employment or housing to support themselves. In so doing, MWARECHEONG and Weires created a situation where G.T and J.T. must either continue complying with MWARECHEONG and Weires's requests or risk being homeless and without a means of supporting themselves in a foreign country where they did not speak the language and had no means of returning home.

8. Defendant hereby certifies that the facts set forth above are true and accurate to the best of Defendant's knowledge.

10/5/2022  
Date

*Nesly. M*  
Nesly Mwarecheong  
Defendant

9/30/22  
Date

Andrew Graeve  
Attorney for Nesly Mwarecheong

Richard D. Westphal  
United States Attorney

10/5/2022  
Date

By: _____  
Ryan W. Leemkuil  
Assistant U.S. Attorney

Kristen M. Clarke  
Assistant Attorney General for the United States

10/5/2022  
Date

By: _____  
Christina Randall-James  
Trial Attorney

17

CERTIFICATION OF INTERPRETATION

The undersigned hereby certifies that he/she is fluent in the English language and the **Chuukese** language; and that he/she has truly and accurately sight-translated the foregoing PLEA AGREEMENT in the presence of NESLY MWARECHEONG, providing a complete and accurate rendition in order to convey the true legal equivalent of the entire document to the best of his/her knowledge and ability, in accordance with the Code of Professional Responsibility of the Official Interpreters of the United States Court.

Interpreter's Name (printed): _____Jill Short_____

9/29/2020
Date

Interpreter's Signature: *Jill A. Short*